U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

DEC  4 2009

CLERK, U.S. DISTRICT COURT
By_____
               Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| BOBBY LEE BIFFEL, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:09-CV-067-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>
<u>**AND NOTICE AND ORDER**</u>

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Bobby Lee Biffel, TDCJ-ID #1069163, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Abilene, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

On November 1, 2001, a jury convicted Biffel of murder and sentenced him to 48 years'

imprisonment. (Clerk's R. at 83)  Biffel appealed, but the appellate court affirmed the trial court's

judgment, the Texas Court of Criminal Appeals refused Biffel's petition for discretionary review,

and the Supreme Court denied his petition for a writ of certiorari. *Biffel v. Texas*, No. 2-01-478-CR,

slip op. (Tex. App.–Fort Worth Jun 26, 2003) (not designated for publication); *Biffel v. Texas*, PDR

No. 1436-03; *Biffel v. Texas*, No. 03-9207.  Biffel also sought postconviction state habeas relief, to

no avail. *Ex parte Biffel*, State Habeas Appl. No. WR-69,275-01, at cover.  This federal petition

followed.

At trial, the state's evidence reflected that Biffel frequently visited the victim Johnny Ochoa's

house and that the two were secretly involved in a homosexual relationship for a number of years

preceding Ochoa's murder. (5RR at 9-31)  Biffel wanted to keep the relationship a secret from his

girlfriend and family, but Ochoa did not, and there were several incidents of violence between the

two involving police intervention.  Eventually, a riff developed between them over money matters,

but Ochoa continued to pursue Biffel.  Biffel believed Ochoa was stalking him or might have a

"fixation" on him.  On the night of October 17, 1998, a Saturday night, Biffel and his younger

brother Jerry Biffel, who was close friends with Ochoa, went to Ochoa's house and stayed into the

morning hours of October 18.  They smoked marihuana, and Biffel and Ochoa used cocaine in the

bedroom while Jerry played video games in the living room.  After midnight, Jerry heard Biffel

washing his hands in the bathroom.  Biffel came out of the bedroom, put his socks and shoes on, and

told Jerry they had to leave. (5RR at 115-57)  Biffel had several stains on his shirt, which could have

been blood, and, after leaving, he told Jerry that he had hit Ochoa.  Ochoa's body was discovered

several days later by family members, including Javier Rodriguez, after they were forced to break

into the house.  Ochoa had been dead at least 18 hours when his body was discovered.  He was face

2

up on the bed, wearing only boxer shorts. Another pair of boxer shorts stained with dried blood had been placed over his face, and his feet were entwined in the sheets. Ochoa's throat had been cut and there were multiple blunt force and knife wounds to the back, side and front of his head, neck and chest. (5RR at 159-81) An empty bottle of rubbing alcohol, which can be used to clean objects, was laying next to Ochoa's body, and a kitchen knife from a matching set in Ochoa's kitchen was found under the bed. There were no signs of forced entry or a struggle, and the air conditioning and television were still on. "Love letters" from, and pictures of, Biffel were found in the house. None of the Biffels attended Ochoa's funeral. The lead detective believed the overall crime scene suggested that Ochoa was possibly in bed, undressed, with someone he knew and was comfortable with at the time of the attack. He further believed the scene suggested Ochoa had been laying face down and at some point turned over. (5RR at 183-206) The defense presented no witnesses or evidence.

### D. ISSUES

Biffel claims that (1) the trial court abused its discretion by failing to give accomplice-witness instructions to the jury, (2) he received ineffective assistance of trial counsel, (3) the state engaged in prosecutorial misconduct, (4) there is no evidence to support his conviction, (5) the trial court erred by entering a deadly weapon finding, (6) his due process rights were violated in jury selection, and (7) his due process rights were violated by the trial court's exclusion of Javier Rodriguez's out-of-court statement to law enforcement. Biffel's claims are multifarious and addressed as thoroughly as practicable.

### E. RULE 5 STATEMENT

Thaler believes that Biffel has failed to exhaust his state court remedies as to one or more of

his claims and that the claims are procedurally barred. (Resp's Answer at 6)

## F. DISCUSSION

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of

rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### (1), (5) and (7) Trial Court Error

Biffel claims the trial court abused its discretion by denying his request for accomplice-witness jury instructions regarding the trial testimony of his brother Jerry Biffel. According to Biffel, sufficient evidence existed to treat Jerry as an accomplice-witness in Ochoa's murder. (Pet'r Memorandum in Support at 1-5, 45-47, 49-50) Under state law, a defendant may not be convicted upon the testimony of an accomplice witness unless the testimony is corroborated by other evidence tending to connect the defendant to the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). An accomplice is someone who participates with the defendant before, during, or after the commission of an offense and acts with the required culpable mental state. *Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App.), *cert. denied,* 128 S. Ct. 627 (2007). A witness is not an accomplice unless his participation with the defendant involved an affirmative act that promoted the offense for which the defendant was charged. *Id.* It is not sufficient that the witness knew of the offense and failed to disclose it or even concealed it, nor is the witness's mere presence at the scene of the crime sufficient. *Id.* A defendant is entitled to an accomplice-witness instruction, either as a matter of law or a matter of fact, only if there is sufficient evidence in the record to support a charge against the witness alleged to be an accomplice. *Medina v. State,* 7 S.W.3d 633, 641 (Tex. Crim. App. 1999); *Blake v. State,* 971 S.W.2d 451, 454-455 (Tex. Crim. App. 1998).

5

The failure of a court to give a requested jury instruction in a state criminal trial does not generally provide a basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991). Biffel has not identified any federal legal authority, either constitutional in nature or otherwise, which purports to recognize a federal right to have a criminal jury instructed on a testifying witness's status as an accomplice, and none is found. Under these circumstances, claims of improper jury instruction or rejection of a requested jury instruction will only support a claim for habeas relief if the erroneous instruction by itself rendered the trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145, 154-55 (1977); *Cupp v. Naughten,* 414 U.S. 141, 147 (1973); *see also Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002) (relevant inquiry on claims of improper or rejected jury instructions is whether there was prejudice of constitutional magnitude). To prove that rejection of a jury instruction was so prejudicial that it will support a collateral attack on the constitutional validity of the state court judgment, a petitioner must show that failure to give the instruction by itself so infected the entire trial that his resulting conviction violates due process. *Henderson,* 431 U.S. at 154-55.

Biffel has not demonstrated that Jerry was an "accomplice" within the meaning of the state accomplice-witness rule. There is no evidence that he actively participated in the attack or that he was threatened with prosecution by the state. In view of the requirements of state law with respect to an accomplice-witness instruction, the trial court did not err in failing to give an accomplice-witness jury instruction. Nor can Biffel demonstrate his trial was rendered fundamentally unfair as a result of the trial court's refusal to grant his request for such an instruction.

Biffel claims the trial court erred by entering an affirmative deadly weapon finding that a knife was used without evidence to warrant such a finding. The indictment charged Biffel with

causing Ochoa's death by cutting or stabbing Ochoa with a knife and by striking Ochoa with an

unknown object.  The trial court in its jury charge tracked the indictment and in its application

paragraph submitted both theories in the disjunctive and included a general verdict form that asked

the jury to determine if Biffel was guilty of murder as charged in the indictment.[1]

The Supreme Court has not held that the Constitution imposes a jury unanimity requirement.

*See Hoover v. Johnson,* 193 F.3d 366, 368 & n.2 (5th Cir. 1999).  A trial court is authorized to

instruct a jury that it may find that the defendant committed an offense by one or more specified

means, even if the offense is charged in the conjunctive.  *See Schad v. Arizona,* 501 U.S. 624, 631

(1991); *Capps v. Collins,* 900 F.2d 58, 59 n.2 (5th Cir. 1990) ("Use of the conjunctive rather than the

disjunctive in the indictment did not oblige the state to prove both.").  The same is true under Texas

state law.  *See, e.g., Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding that

---

[1]The application paragraph in the jury charge provided:

Now if you find from the evidence beyond a reasonable doubt that on or about the 17th day of October, 1999, in Tarrant County, Texas, the defendant , Bobby Lee Biffel, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by cutting or stabbing Johnny Ochoa with a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa; ***or if you further find*** from the evidence beyond a reasonable doubt that on or about the 17th day of October, 1999, in Tarrant County, Texas, the defendant, Bobby Lee Biffel, did then and there intentionally, with the intent to cause serious bodily injury to Johnny Ochoa, commit an act clearly dangerous to human life, namely, by striking Johnny Ochoa with an object unknown to the grand jury, that in the manner of its use or intended use was capable of causing death or serious bodily injury, which caused the death of Johnny Ochoa, then you will find the defendant guilty of murder, as charged in the indictment. (Clerk's R. at 65 (emphasis added))

The state appellate court, relying solely on state law, concluded "a disjunctive interpretation of the charge" was proper, or, in the alternative, that the charge error, if any, did not affect the outcome of Biffel's trial.

"although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive"). Alternate pleading of the differing methods of committing one offense may be charged in one indictment. *Id.* Several ways or means of committing the same offense may be alleged conjunctively, and proof of any one of these ways will suffice. *Id.* Thus, it is proper under state law for an indictment to allege manner and means of committing an offense in the conjunctive, and for those different methods of committing the offense to be charged to the jury in the disjunctive. *Id.* If the indictment alleges differing methods, the jury may properly be charged in the disjunctive and the jury is authorized to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted.

The medical examiner testified that the cut wounds and the stab wound to Ochoa's neck were made by a serrated or sharp, flat object like a knife blade, capable of causing death or serious bodily injury in the manner and means used on Ochoa, and that the stab wound to the neck was a contributing cause of death. The medical examiner further testified that the stab wound to the neck damaged Ochoa's left common corroded artery which would kill a person. (5RR at 165-77) Based on this evidence, the appellate court determined the evidence was legally sufficient to support Biffel's conviction under both theories; thus, the jury could rely on either theory to convict him. (State Habeas R. at 159) The state court's determination of the issue is neither contrary to nor does it reflect an unreasonable application of Supreme Court law on the issue and does not appear unreasonable in light of the evidence presented at trial.

Biffel claims the trial court erred by granting the state's motion in limine restricting, on hearsay grounds, his cross-examination of a detective in the case regarding case notes wherein the detective states Javier and Robert Rodriguez told him that Ochoa was gay and was known to deal

8

drugs in the area. (5RR at 204)  At trial, Javier Rodriguez testified prior to the detective and denied telling police that Ochoa sold illegal drugs from his home. (5RR at 52-54) Biffel argues establishing Ochoa's reputation as a drug dealer was material to his defense and exclusion of Rodriguez's out-of-court statement to police violated his right to confront and impeach Rodriguez.

The Confrontation Clause guarantees a criminal defendant the right to cross-examine the witnesses against him. U.S. CONST. amend VI; *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Thus, a criminal defendant has a constitutional right to cross-examine a prosecution witness and thereby expose any information relating to the reliability of the witness. *Davis v. Alaska,* 415 U.S. 308, 315-16 (1974).  The right to cross-examination however is not unlimited.  *Pennsylvania v. Ritchie,* 480 U.S. 39, 53 (1987).  Trial judges may impose limits on cross-examination under the rules of evidence or based on concerns about harassment, prejudice, confusions of the issue, the witness's safety, and interrogation that is repetitive or only marginally relevant. *Van Arsdall,* 475 U.S. at 679.

The exclusion of Rodriguez's out-of-court statement to law enforcement did not so limit the defense's ability to adequately confront Rodriguez that it constituted a federal constitutional violation.  Rodriguez was subject to cross-examination, and Biffel was allowed to question him regarding his knowledge of Ochoa's drug-related activities.  Furthermore, even if the trial court erroneously excluded Rodriguez's out-of-court statement, such disallowance did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).  Other admissible evidence demonstrated that Ochoa was involved in illegal drug activity.

## (2)  *Ineffective Assistance of Counsel*

Biffel claims his court-appointed trial counsel was ineffective by failing to (A) investigate, (B) to file a motion to suppress, (C) consult with and advise him, (D) prepare a defensive theory, (E) call witnesses, (F) consult with and call expert witnesses, (G) impeach and cross-examine witnesses, (H) object to the state's closing argument, admission of evidence, and the jury charge, (I) advance a trial strategy, and (J) subject the state's case to an adverse testing process.  (Pet'r Memorandum in Support at 6-31)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.  Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.  In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The state habeas judge, who also presided over Biffel's trial, conducted a hearing by affidavit and entered findings of fact refuting Biffel's allegations.  (State Habeas R. at 150-54)  Applying the *Strickland* standard to its factual findings, the state court concluded Biffel had failed to demonstrate that counsel was deficient or that but for counsel's alleged acts or omissions, he would have been

Biffel claims his trial counsel was ineffective for failing to investigate the facts of his case, interview and call witnesses, including expert witnesses, and follow up on leads that Tomas Lanz could have been a possible suspect. In support, Biffel presented the affidavits of his brothers Larry and Tony Biffel and his girlfriend Stephanie Montez, who were willing to testify that Biffel and Jerry stopped by Larry's house after midnight on the night in question, that Biffel did not have any blood on his clothes, that Biffel and Jerry acted normally and denied any knowledge about the murder, and that they thought Ochoa's murder was drug-related. (State Habeas R. at 120-23)

In his affidavit, counsel responded that he obtained a court-appointed investigator to assist in the case and that a thorough investigation was conducted, which included an evaluation of the state's case and interviews with witnesses. Counsel indicated that he and the investigator came up with no other possible suspects who might have had access to Ochoa during the particular time-frame of the murder, save for Jerry Biffel, and Biffel did not "want the finger to be pointed at [Jerry]." (*Id.* at 135) Counsel further indicated that he did not consult a handwriting expert because "this was not an issue after consulting with" Biffel, and he could not see how an expert witness would help the defense. (SX 81)

The state habeas court found counsel's affidavit credible, and those of the affiants for Biffel incredible. Such credibility determinations are entitled to deference, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Galvam v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990). As to other alleged uncalled witnesses, Biffel provides no affidavits or other evidence that they had information that would have resulted in his acquittal or that they would have been available and willing to testify at his trial. Complaints of uncalled witnesses are not favored in federal habeas corpus review because

allegations of what the witness's testimony would have been are largely speculative. *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001). Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Sayre,* 238 F.3d at 636. This showing is required for claims regarding uncalled lay and expert witnesses alike. *See, e.g., Evans,* 285 F.3d at 377-78 (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated); *United States v. Doublin,* 54 Fed. Appx. 410, 2002 WL 31689398, at *2 (5th Cir. 2002). Where the only evidence of a missing witness's testimony is from the defendant, the court views claims of ineffective assistance with great caution. *Sayre,* 238 F.3d at 635-36; *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986). Biffel has not established that counsel's investigation was inadequate or that there were uncalled witnesses that were available and willing to testify on his behalf and that their testimony would have been favorable to his defense.

Biffel claims his trial counsel was ineffective by failing to communicate with and advise him and that counsel's lack of commitment prejudiced the defense. Counsel stated in his affidavit that "there were enough consultations" with Biffel and the investigator and that Biffel "was not receptive to anything negative, nor any advice given him to resolve" the case. Biffel turned down a 10-year plea offer but would have pled guilty to a 10-year probation, which counsel could not obtain for him. Moreover, the record reflects that, several months before trial, counsel was told "to stand down" because Biffel had hired another attorney. Counsel only learned two weeks before trial that Biffel's check to hire the other attorney did not clear the bank. (2RR at 9) This claim is conclusory.

12

Biffel claims counsel was ineffective by failing to prepare a defense to rebut Jerry Biffel's testimony, to prepare a defensive theory that Biffel was not Ochoa's lover and the murder was drug-related, or to subject the state's case to adverse testing process. In his affidavit, counsel explained that after Biffel refused a plea offer, the only alternative strategy left them was, "I did not do it." Counsel could not produce any other known suspects in the case, except Biffel's brother Jerry, whom Biffel did not wish to accuse. Counsel averred that he did his best in defending Biffel. The state habeas court found counsel's statements to be true and entered findings of fact based on counsel's testimony. Biffel presents nothing to rebut the presumption of correctness of the state's court's factual findings. This claim is conclusory.

Biffel claims trial counsel was ineffective by failing to properly cross-examine and impeach Jerry Biffel about his version of events on the night of the murder, state witnesses regarding Ochoa's violent and aggressive nature towards Biffel and his family, and Ochoa's involvement in illegal drug activity and dangerous lifestyle. Counsel responded that he cross-examined the state's witnesses to the best of his ability. Biffel has not shown what further cross-examination would have accomplished or that counsel's trial tactics in choosing whom and to what extent to cross-examine were so obviously ill-chosen that his trial was permeated with obvious unfairness. *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995). Further, contrary to Biffel's assertion, during cross-examination, counsel evoked testimony that there was evidence of violence involving Ochoa and that Ochoa was engaged in illegal drug activity. Further, counsel evoked testimony from Jerry that he gave false statements to law enforcement officers and to the grand jury and that the jury "probably shouldn't" believe his testimony at trial.

Biffel claims trial counsel was ineffective by failing to object to (1) improper remarks by the

13

prosecutor during closing argument, (2) admission of photographs of the knife and a "General Forbearance Request" in his mother's name found at the crime scene, and (3) the jury charge.

Biffel complains, during the guilt-innocence phase of trial, the prosecutor improperly argued that the knife found at the scene was the murder weapon and a "General Forbearance Request" signed by Biffel's mother was evidence that Biffel was in debt to Ochoa and, thus, provided a motive for the murder. Counsel testified that he did not recall anything out of the ordinary, or inadmissible, in the state's closing remarks and that any such claim should have been raised on direct appeal. In addition to *Strickland*'s presumption that counsel's conduct falls within the wide range of reasonable professional assistance, a decision not to object to a closing argument is a matter of trial strategy. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Furthermore, the prosecutor's comments are reasonable deductions from the evidence. *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007) ("Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement."). Biffel has not established that, had his attorney objected, there was a reasonable probability that the objection would have been sustained, or, if denied, that the result of his trial would have been different.

Biffel claims counsel was ineffective by failing to file a motion to suppress and/or object to admission into evidence photographs of the kitchen knife, resulting in a deadly weapon finding, and the "General Forbearance Request" found at the scene of the crime. Counsel explained that there was no legal reason to file a motion to suppress the knife because it was found at the scene and because it was never argued that the knife was the murder weapon. Under state law, "[a]s a general rule an object offered in evidence should not be rejected merely because it is not positively identified

14

as the exact object that was connected with the crime." *Hicks v. State,* 508 S.W.2d 400, 402 (Tex. Crim. App. 1974). The photographs were admissible and offered for the purpose of showing the jury evidence found at the crime scene. (5RR at 94-98) No witness testified and no testing revealed that the knife was the weapon used during the crime or that the General Forbearance Request was proof that Biffel was in debt to Ochoa. If the photographs were admissible, then counsel's failure to object to them does not constitute deficient performance. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990) (holding that in the context of an ineffective-assistance of counsel claim, counsel is not required to make futile motions or objections). Further, the jury was instructed to determine whether Biffel committed murder by one of two alternative methods, which differed relative to the deadly weapon allegedly used or exhibited: a knife or an unknown object. Because the jury returned a general verdict finding Biffel guilty, the verdict, including the deadly weapon finding, may be upheld if the evidence is sufficient, as it is in this case, to support a finding that Biffel committed murder by either alternative method. *Brooks v. State*, 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Finally, Biffel claims counsel was ineffective by failing to object to the jury charge. The jury charge at issue did not constitute constitutional error nor was it erroneous under state law, as determined by the state courts on direct appeal. In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson,* 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir. 1995). Biffel has neither alleged nor shown that the state habeas court's analysis of state law was incorrect; thus, counsel was not deficient for failing to object to the charge.

In summary, applying the appropriate deference to the state's factual and credibility

determinations, the state courts' decision denying Biffel's ieffective assistance claims is not contrary

to or involve an unreasonable application of *Strickland*. Biffel presents a laundry list of mostly

conclusory allegations. Such allegations do not raise a constitutional issue. *Green v. Johnson*, 160

F.3d 1029, 1042 (5th Cir. 1998). Nor do the conclusory allegations demonstrate prejudice.

### *(3) Prosecutorial Misconduct*

Biffel claims the prosecution engaged in misconduct by (1) eliciting perjured testimony from

Jerry Biffel and Javier Rodriguez, (2) failing to disclose an agreement with Jerry Biffel for his

testimony, (3) improperly bolstering Jerry's Biffel's testimony, (4) making improper jury argument,

and (5) withholding the affidavit of Lloyd Whelchel, one of the state prosecutors who assisted in the

prosecution of Biffel's case.

A prosecutor's use of perjured testimony to convict a defendant is grounds for habeas corpus

relief. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). In order to obtain habeas corpus relief

on these grounds, a petitioner must prove that (1) the testimony was actually false, (2) the prosecutor

knew it was false, and (3) the testimony was material to proving his guilt. *Little v. Butler*, 848 F.2d

73, 76 (5th Cir. 1988). Based upon the affidavits of the prosecuting attorneys, including Whetchel's,

and the state investigator, the state habeas court found there was no evidence to support Biffel's

allegations that Jerry Biffel or Rodriguez testified falsely, that Jerry was threatened, coerced or

forced to testify falsely by the state, that the state knowingly presented false testimony, or that the

state made an agreement with Jerry in exchange for his testimony. (State Habeas R. at 156; Supp.

State Habeas R. at 4-13) Deferring to these findings, which are supported by the record, and the state

court's credibility determinations regarding these matters, there is no factual basis for Biffel's claims

(1) and (2).

16

Biffel claims the prosecutors improperly bolstered the credibility of Jerry Biffel's testimony, solely to gain a conviction against him, by asking Jerry if he was closer to Biffel than his other brothers and if he confided in Biffel. The state habeas court rejected the claim because Biffel cited no authority to support a claim that Jerry's testimony was bolstering of his *own* credibility. "Bolstering occurs when one party introduces evidence for the purpose of adding credence or weight to earlier unimpeached evidence offered by that same party." *Rousseau v. State,* 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (citing *Guerra v. State,* 771 S.W.2d 453, 474 (Tex. Crim. App. 1988)). State courts define bolstering as "any evidence the **sole** purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit," when the credibility of that witness or source has not been attacked. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (emphasis in original). In this case, it appears the prosecutor's line of questioning was for the purpose of establishing that Jerry was so close to Biffel that he was familiar with Biffel's handwriting and his signature. Having established that fact, the state was able to show that letters to Ochoa found at the scene were written by Biffel. Nevertheless, Biffel has not demonstrated that the state courts' rejection of the claim is contrary to Supreme Court law on the issue.

Biffel claims the prosecutors made improper remarks during closing argument. (Pet'r Memorandum at 36) Counsel averred that he did not recall any improper remarks during the state's closing argument and that the claim should have been raised on direct appeal. The habeas court agreed and noted: "Improper jury arguments are not allowable grounds for post-conviction writ, because they are neither fundamental nor jurisdictional claims; they require harmless error analysis; and they do not render proceedings absolutely void." (State Habeas R. at 162) A federal court is precluded from granting habeas relief where the last state court to consider the claim expressly and

17

unambiguously based its denial of relief on an independent and adequate state-law procedural ground. *Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003).

Biffel claims the prosecution, in violation of *Brady v. Maryland*, withheld prosecutor Whelchel's affidavit regarding a discussion he had with Jerry Biffel outside the grand jury room, which supports Biffel's claims that Jerry was coerced into changing his testimony. 373 U.S. 83 (1963).[2]

The state habeas court found that Biffel had presented no credible evidence that there was "wrongfully excluded evidence" that would have resulted in his acquittal. (State Habeas R. at 159, 162) To establish a *Brady* claim, the petitioner must demonstrate: (1) the prosecutor suppressed evidence, (2) favorable to the defense, and (3) material to guilt or punishment. *Id.* at 373; *Miller v. Dretke*, 404 F.3d 908 (5th Cir. 2005). Biffel has failed to demonstrate that Whelchel's affidavit is, in fact, exculpatory or that the state court's determination of the issue is contrary to or an unreasonable application of the *Brady*.

---

[2]In relevant part, Whelchel averred:

> At the conclusion of his initial appearance in front of the grand jury, Jerry Biffel appeared to be upset. As I walked Jerry Biffel out of the grand jury room, I noticed that he was distraught, and was crying a little. I asked Jerry Biffel to wait on me in the hallway outside of the grand jury room while I spoke to someone else.
>
> I went back out and spoke to Jerry Biffel and asked him what was wrong. Jerry Biffel told me that he was scared of getting in trouble because he had not been completely truthful about what had happened. I told Jerry Biffel that he was not in trouble, that he needed to tell the grand jury the truth as to what he knew and what had happened. Jerry Biffel told me what he had been lying about. I asked him if he would tell the grand jury what he had just told me and he agreed.
>
> Jerry Biffel was brought back in front of the grand jury and shared with them what he had told me. At the conclusion of this appearance in front of the grand jury, I asked Jerry Biffel about our details of our conversation outside the grand jury room. Jerry Biffel told the grand jury that I never threatened him, made him any promises, nor told him what to say.

*(4) No Evidence*

Biffel claims there was no evidence to convict him of murdering Ochoa beyond a reasonable doubt, given most of Jerry Biffel's testimony, the lack of eye-witnesses or physical evidence connecting him to the crime, the fact that he made no attempt to flee and gave no statements incriminating himself, and the fact that he had no criminal history.

In challenges to state convictions under § 2254, only the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), need be satisfied. Under this standard, a federal court must consider whether, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt. *Id.* Direct and circumstantial evidence adduced at trial, as well as all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict. *See United States v. Sanchez,* 961 F.2d 1169, 1173 (5th Cir. 1992). The jury is the final arbiter of the weight of the evidence and of the credibility of witnesses. *United States v. Barksdale-Contreras,* 972 F.2d 111, 114 (5th Cir. 1992).

The state appellate court concluded that the evidence was legally sufficient to support Biffel's conviction on either theory alleged in the indictment. In turn, the Texas Court of Criminal Appeals also rejected Biffel's sufficiency claim by refusing his petition for discretionary review and the Supreme Court by denying Biffel's petition for writ of certiorari. This was an adjudication regarding the merits of the claim. Having conducted an independent inquiry as to sufficiency under the *Jackson* standard, the state courts' disposition of the legal sufficiency-of-the-evidence claim appears consistent with *Jackson*.

*(6) Jury Selection*

19

Biffel claims his right to due process was violated because Venireman Parker, who had been the victim of a crime near the time of Ochoa's murder, was not fully explored for potential bias during voir dire and Venireman Michaels, who had also been the victim of a crime, was excused.

The Sixth Amendment guarantees defendants the right to an impartial jury. The questioning of prospective jurors at voir dire is critical to preserving that right. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). Texas procedure requires a party to probe a juror's potential biases during jury selection. *Gonzales v. Texas*, 3 S.W.3d 915, 916-17 (Tex. Crim. App. 1999).

Venireman Parker was individually questioned and denied that he harbored any bias against Biffel as a victim of crime or as a result of Biffel's lifestyle. (4RR at 79-80) Absent affidavits or other testimony from Parker, the trial participants, or the jurors, Biffel's assertion that Parker was biased and unable to be impartial lacks factual support. Thus, the courts reasonably found that Biffel did not show jury bias.

## II. RECOMMENDATION

Based on the foregoing, it is recommended that Biffel's petition for writ of habeas corpus be denied.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and

recommendation until December 28, 2009. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until December 28, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 4, 2009.

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

21